577 So.2d 308 (1991)
Theodore R. ROBERTS, et al.
v.
MURPHY OIL CORPORATION and Louisiana State Department of Transportation and Development.
No. 90-CA-0399.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1991.
Writ Denied May 24, 1991.
*309 Jennifer N. Willis, Cater & Willis, New Orleans, for plaintiffs-appellants.
Peter A. Feringa, Jr., John F. Olinde, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendants-appellees.
Gregory J. Lannes, Jr., Louisiana Dept. of Transp. and Development, Chalmette, for defendant-appellee.
Deborah F. Cottrell, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for 3rd party defendant-appellee.
Before KLEES, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
Plaintiff, Theodore Roberts and other residents of Jacob Drive in St. Bernard Parish filed a petition for damages and injunctive relief on July 7, 1982 against defendants Murphy Oil Corporation (Murphy) and the Louisiana Department of Transportation and Development (DOTD). Plaintiffs alleged that their homes sustained flood damage on May 3, 1978, April 13, 1980 and April 25, 1982, when surface water failed to drain in their neighborhood during heavy rains on those occasions. Plaintiffs allege the drainage failure resulted from DOTD and Murphy's altering of the existing drainage pattern in the area in 1972-1973 during construction of La. Hwy. 39, also known as the Judge Perez Drive extension. Plaintiffs further allege that the water run-off from Murphy's 25 acre property bordering Jacob Drive, which had previously gone into the 40 Arpent Canal, *310 went instead into the Jacob Drive Subdivision drainage system after completion of the highway. St. Bernard Parish Police Jury was later made a defendant in the suit.
In response to plaintiffs' petition, Murphy filed an exception of prescription contending that plaintiffs' claims for damages allegedly resulting from the 1978 and 1980 floods had prescribed pursuant to the one-year prescriptive period in LSA-C.C. art. 3492. The public defendants, St. Bernard Parish and the DOTD, also filed exceptions of prescription arguing that plaintiffs' claims relative to all three floods had prescribed under LSA-R.S. 9:5624.
On November 3, 1989, plaintiffs filed a second supplemental and amending petition seeking to clarify their original allegations against Murphy. Murphy then filed a motion to strike, claiming that plaintiffs were raising new allegations in violation of a pre-trial order.
After a hearing on the motions the trial judge granted St. Bernard Parish and the DOTD's exceptions, dismissing plaintiffs claims against them. The trial judge also granted Murphy's exception of prescription, dismissing plaintiffs claims for damages sustained prior to July 7, 1981 and also its motion to strike barring all claims against Murphy that were not alleged in the original petition.
Plaintiffs appeal the trial court judgment. Murphy has filed an exception of prescription before this court, seeking dismissal of all claims against it pursuant to LSA-R.S. 9:5624.
On appeal, plaintiffs contend that the trial judge erred in applying the two-year prescriptive period of LSA-R.S. 9:5624, which applies when private property is damaged for public purposes. They maintain that the two-year period is applicable only for damages resulting from intentional and necessary work and is not applicable to a claim for damages resulting from negligent acts. Plaintiffs argue that LSA-C.C. arts. 3492 and 3493, the general prescriptive statutes relative to delictual actions and damage to immovable property, are applicable in this case. Defendants argue that plaintiffs' damages were inherent in the nature of the road construction per se and thus they were intentional because the decision to build the road was intentional.
LSA-R.S. 9:5624 specifically provides:[1]
When private property is damaged for public purposes any and all actions for damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained.
Interpreting the intent of the statute, the Supreme Court in Lyman v. Town of Sunset, 500 So.2d 390 (La.1987) concluded that LSA-R.S. 9:5624 is applicable in those cases where damage to private property was a necessary consequence of a public purpose. The Third Circuit in Perkins v. Simon, 265 So.2d 804 (La.App. 3d Cir.1972) held that the two-year prescriptive period is applicable only when the damage to private property is the intentional or necessary result or consequence of the construction work incidental to a public purpose and is not applicable to a claim for damages resulting exclusively from the negligent acts or omissions of the principal, its agents or employees causing the damage. Likewise, in Oswalt v. Irby Construction Company, 424 So.2d 348 (La. App. 2d Cir.1982), the court found that the two-year prescriptive period in LSA-R.S. 9:5624 was applicable where the plaintiff's rice crops were damaged in the course of the construction of power lines across plaintiff's rice fields pursuant to a construction contract between defendant and Louisiana Power & Light Company. The court held that the public purpose work which caused the damage was intentional and necessary and it mattered not for purposes of determining the applicable prescriptive period that the work was done in a negligent manner or that the full extent of the damages might have been unintentional.
*311 In the instant case at the hearing on defendants' exception of prescription, plaintiffs offered the testimony of Steven Estopinal, a licensed civil engineer and land surveyor, as an expert witness. Estopinal testified that he had designed several subdivision drainage systems in St. Bernard Parish and was familiar with the Jacob Drive drainage system. According to him, the Jacob Drive flooding occurred because the super elevation of the Judge Perez Drive extension disrupted the drainage system. Estopinal opined that the resultant flooding was not a necessary and intended consequence of the Judge Perez Drive extension project. He further testified that there were alternative ways that the highway could have been built without destroying or disrupting the drainage system on Jacob Drive. Defendants offered no testimony or evidence to refute Estopinal's testimony or to prove that the flooding of Jacob Drive was a necessary or intentional consequence of the extension of Judge Perez Drive.
In his reasons for judgment, the trial judge did not address the issue of whether damage to plaintiffs' property was the intentional or necessary result or consequence of the construction of the Judge Perez Drive extension and his final judgment was not made on this basis. After review of the record, we find that the damages claimed by plaintiffs in this suit were not the intentional and necessary consequence of the construction work which was performed incidental to a public purpose. We further find that it was not necessary or intended that the drainage system of Jacob Drive be altered so as to cause flooding during normal rainfall. Accordingly, we find the trial court erred in applying the two-year prescriptive period in LSA-R.S. 9:5624 so as to bar all plaintiffs' claims against St. Bernard Parish and DOTD. We therefore conclude that the one year prescriptive period set forth in LSA-C.C. art. 3493 relative to damage to immovable property applies to this case.
Plaintiffs further contend that the alteration of the Jacob Drive drainage system and recurrent floodings constituted a continuous tort and therefore prescription did not begin to run until the tortious conduct ceased, in this case April 25, 1982.
In support of their contention that the alteration of the drainage system and recurring floods were a continuous tort, plaintiffs rely on the holding in South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531 (La.1982). In that case, gasoline from defendants' service stations continuously leaked underground, saturating and deteriorating the polyethylene sheaths of subterranean telephone cables through the action of the petroleum product. The Supreme Court held that prescription against defendants did not begin to run until the leaking gasoline tanks were removed. The court concluded that the doctrine of continuing tort applies only when both the alleged wrongful act and the damages caused by it are continuous.
Under the facts of this case, plaintiffs' damages resulted from three separate and distinct incidents of flooding. A further review of the jurisprudence indicates that repeated instances of flooding caused by the negligent alteration of drainage are separate and distinct events which do not serve to interrupt prescription. See, Carbo v. Hart, 459 So.2d 1228 (La.App. 1st Cir.1984) writ denied, 462 So.2d 654 (La. 1985); Nuckolls v. Louisiana State Highway Department, 337 So.2d 313 (La.App. 2d Cir.1976). Hence, the trial judge was correct in concluding that the separate flooding incidents and the alteration of the Jacob Drive drainage system did not constitute a continuous tort.
Plaintiffs, in opposition to defendants' exception of prescription, invoke the doctrine of "contra non valentum agere nulla currit prescriptio" in support of their position that prescription was suspended against them until April 25, 1982. They contend their claims against defendants for damages resulting from the floods on May 3, 1978 and April 13, 1980 had not prescribed as they had no knowledge that these floods were caused by the Judge Perez Drive extension project because the heavy rains on these two occasions caused widespread flooding throughout St. Bernard *312 Parish. They allege it was not until the rainfall on April 25, 1982 when flooding was confined only to Jacob Drive that they had sufficient notice that their flood damage was due to the alteration of the drainage system caused by the road construction.
Prescription for damage caused to immovable property commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage. LSA-C.C. art. 3493. When a party has enough notice to excite attention and put him on guard and to call for inquiry, he has sufficient knowledge to start the running of prescription. Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (La.1970).
In Jordan v. Employee Transfer Corporation, 509 So.2d 420 (La.1987), the Louisiana Supreme Court further delineated the rules regulating the running of prescription. The court stated:
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. id at 423.
Defendants argue that plaintiffs had actual knowledge that the flooding was caused by the alteration of the drainage system due to the Judge Perez Drive extension project as evidenced by an affidavit executed by plaintiff Theodore Roberts filed in opposition to defendant Murphy's motion for summary judgment which the trial court denied.
In his affidavit, plaintiff Roberts stated that he has owned his home on Jacob Drive since May, 1963, and at the initial flooding he personally observed a culvert running under the shell road on the Murphy Oil property which drained into the drainage ditch on Jacob Drive. He further avered that prior to the actual road construction project on Judge Perez Drive his home had never flooded but after completion of the project his home had flooded on five occasions. However, at the hearing on the exceptions of prescription, Roberts testified, under oath, that the plaintiffs were aware of the flooding on May 3, 1978 and April 13, 1980 but that the greater portion of St. Bernard Parish had also flooded on those two occasions. On direct examination Roberts denied that he was aware of the alteration of the drainage system prior to 1982 when, while employed by St. Bernard Parish on a road crew, he and other workers unsurfaced a culvert at Jacob and Judge Perez Drives and noticed water from a pipe emanating from Murphy's property draining into the drainage ditch between Jacob Drive and Murphy's property. Defendants offered no evidence to refute this testimony.
The trial judge made no factual determination as to whether plaintiffs knew or should have known that the flooding in 1978 and 1980 was the result of the Judge Perez Drive extension. Further, he did not resolve the conflict or ambiguity between Roberts' affidavit and his testimony at the hearing on the exception of prescription. The resolution of this conflict or ambiguity will require a credibility determination which we cannot make on the appellate level.
This factual determination should be made by the trial judge who has the benefit of the live testimony of Roberts and who must weigh it against his seemingly ambiguous or contradictory affidavit. Accordingly we remand this case to the trial court to make a factual determination as to whether plaintiffs had actual or constructive knowledge that the flooding on May 3, 1978 and April 13, 1980 was caused by the alterations of the drainage system on Jacob Drive as a result of the extension of Judge Perez Drive and was not caused by an act of God.
Lastly, plaintiffs argue the trial court erred in granting Murphy's motion to *313 strike regarding the allegation against Murphy raised in their second supplemental and amending petition. They assert that the second supplemental and amending petition merely clarified the allegations against Murphy set forth in the original petition.
Plaintiffs' original petition alleged that Murphy and the DOTD had executed a change order in the construction project whereby they connected Murphy's drainage with that of Jacob Drive. In paragraphs II and VI of their second supplemental and amending petition plaintiffs allege that Murphy had abandoned existing drainage ditches on its property and cut new ones, thus altering the natural drainage and diverting its water run-off to the Jacob Drive Canal. Murphy contends plaintiffs filed their supplemental petition ex parte without setting it for contradictory hearing and failed to have it served properly by the sheriff.
Once an answer is served, a plaintiff may amend his petition only by leave of court or written consent of the adverse party. LSA-C.C.P. art. 1151. The court may permit the plaintiff to file a supplemental petition on motion, upon reasonable notice and upon such terms as are just. LSA-C.C.P. art. 1155. A party seeking to supplement a pleading must proceed by contradictory motion served on the opposing party by the sheriff. The moving party may not proceed ex parte. Wallace v. Hanover Co. of New York, 164 So.2d 111, 119 (La.App. 1st Cir.1964) writ refused, 165 So.2d 486 (La.1964). The district court has broad discretion in ruling on such motions. Its decision to grant or deny the motion should not be disturbed absent an abuse of discretion. Royer v. St. Paul Fire & Marine Ins. Co., 502 So.2d 232 (La.App. 3rd 1987) writ denied, 503 So.2d 496 (La.1987).
Plaintiffs' original petition was filed on July 7, 1982. More than seven years later, plaintiffs sought to assert different factual allegations against Murphy, ex parte, without a contradictory hearing. Under these circumstances, we cannot say the trial court abused its broad discretion in granting Murphy's motion to strike paragraphs II and VI of plaintiff's second supplemental and amending petition.
For the foregoing reasons, the judgment of the trial court is reversed and vacated insofar as it maintained the exceptions of prescription in favor of defendants, the Louisiana Department of Transportation and Development, the St. Bernard Parish Police Jury and Murphy Oil Corporation, dismissing plaintiffs' claims against them. In all other respects, the judgment is affirmed. The exceptions of prescription are remanded to the trial court for rehearing. The exception of prescription filed by defendant Murphy Oil Corporation in this court is denied.
AFFIRMED IN PART, REVERSED and VACATED IN PART and REMANDED.
NOTES
[1] This statute was amended by Acts 1987, No. 339, Section 1 to provide that the period of prescription shall begin to run after completion and acceptance of the public works.