2CANNELLA, Judge.
Plaintiffs, Mary Dianne Kendrick and Stephen Kendrick (the Kendricks), appeal from two judgments rendered against them on exceptions of prescription, one rendered in favor of defendant, Parish of St. John (the Parish), and the other rendered in favor of defendants, Flossie Egle (Egle), and her insurer, Allstate Insurance Co. (Allstate). For the reasons which follow, we affirm.
The Kendricks have a serious flooding problem at their home, located at 206 Magnolia Street, LaPlace, Louisiana. It has flooded at least 43 times since the spring of 1993. On at least one occasion, sewerage backed up into their home through the toilets. The Kendricks believed that the flooding of their home was caused, in part, by the Parish’s failure to maintain the sewerage and drainage systems in their area. The Kendricks also believed that the flooding of their home was caused in part by their neighbor’s construction of a patio too close to the property line. The Kendricks and Egle own residences next to each pother. Egle had a patio constructed within 8 inches of the property line, rather than 5 feet from the property line as required by parish regulations. Egle built the patio in the fall of 1992. The first flooding of the Ken-dricks’ home occurred some 6 months later in the spring of 1993. The Kendricks believe that because of the close proximity of the patio to the property line, rain flowing from the Egle patio roof causes flooding of their home.
The Kendricks initially filed suit on February 12, 1996 against the Parish. Among other things, the Kendricks alleged that the Parish had failed to properly maintain the sewerage and drainage systems in their area which caused the flooding and backup of sewerage in their home. Thereafter, on May 28, 1997, by supplemental petition, the Kendricks added Egle and her insurer, Allstate, to the lawsuit as defendants. The Kendricks alleged that flooding in their home was due, at least in *719 part, to the construction by Egle of the patio within 8 inches of the property line and in violation of parish regulations. The Kendricks also expanded their action against the Parish by alleging that the flooding of their home was due in part to the Parish’s failure to notice the violation by Egle of the Parish regulations and to enforce them.
In response to the amended petition, both parties, Egle and the Parish, filed separate exceptions of prescription.
The Parish argued that the claim, asserted by the Kendricks pertaining to the Parish’s failure to enforce its regulations as to the location of the patio so near the property line, had prescribed. More particularly, the Parish argued that the claim was covered by La. R.S. 9:5625. That statute provides a prescriptive period of two years for all actions based upon the violation of any building restriction or parish regulation from the first act constituting the commission of [¿the violation. The patio was completed, according to the deposition of Mary Kendrick, in August or September of 1992. The Kendricks experienced the first flooding about 6 months after that, in about March of 1993. Suit was not filed until February 12, 1996, well after the two year prescriptive period had run.
The Kendricks argued that La. R.S. 9:5625 did not apply to this case because it was intended only to control the enforcement of zoning and building regulations and restrictions.
The trial court agreed with the Parish and granted a partial exception of prescription pertaining to the claims against the parish for failure to enforce the parish regulations.
Egle argued that prescription on the claim against them began to run, at the latest, from the date of the first flooding, when the Kendricks were aware of the patio and any problems it presented. She argued that prescription does not run from the date of each flooding. Therefore, because the Kendricks were well aware of any problems in 1993, 6 months after completion of the patio when their house first flooded, and did not file their claim within one year from that date, the claim has prescribed.
The trial court agreed with Egle’s arguments and granted the prescription exception, dismissing the Kendricks’ claims against Egle and Allstate.
It is from both of these judgments that the Kendricks appeal. On appeal, the Kendricks argue, as to the Parish, that La. R.S. 9:5625 does not apply to this case. The Kendricks argue that the provision was passed to allow governmental agencies to enforce zoning restrictions, building restrictions or subdivision regulations, but was not intended to apply to the factual scenario presented herein.
|fi At the times relevant to this case[1], La. R.S. 9:5625 provided in pertinent part:
A. All actions civil or criminal, created by statute, ordinance or otherwise, except those actions
created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by parishes, municipalities or their instrumentalities or by any person, firm or corporation to require enforcement of and compliance with any zoning restriction, building restriction or subdivision regulation, imposed by any parish, municipality or their instrumentalities, and based upon the violation by any person, firm or corporation of such restriction or regulation, must be brought within two years from the first act constituting the commission of the violation; ....
B. In all cases where the prescription provided for herein has accrued, the particular property involved in the viola *720 tion of the zoning restriction, building restriction or subdivision regulation shall enjoy the same legal status as land uses, construction features of buildings or subdivisions made nonconforming by the adoption of any zoning restriction, building restriction or subdivision regulation ....
E. The provisions of this Section shall supersede any other provisions of law inconsistent herewith. (Emphasis provided.)
We find the language of the statute clear, direct and applicable here. The statute, by its terms, applies to all civil actions brought by a person based upon the violation by any person of any zoning restriction, building restriction or parish regulation. It provides that all such actions must be brought within two years from the first act constituting the commission of the violation.
As applied to this case, the two year prescriptive period would have | ^commenced at least by the date that the patio was completed in September of 1992. Therefore, the suit, filed against the Parish on February 12, 1996, over three years later, asserting claims against the Parish for not enforcing the regulations, has clearly prescribed.
Moreover, Part B of the statute provides that in all cases where the prescriptive period has accrued, the particular property enjoys the same legal status as that of a nonconforming use because of a subsequently adopted regulation. Thus, since September of 1994, when the Parish regulations could no longer be enforced against Egle because of the passage of the two year prescriptive period, the patio obtained the status of a nonconforming structure and was no longer deemed in violation of the Parish regulations. Therefore, since the Parish cannot now enforce the regulation against Egle, it likewise cannot be held liable for damages resulting from its non-enforcement.
We find no error in the trial court ruling granting the Parish’s partial exception of prescription as to these claims by the Ken-dricks.
Next we turn to the more difficult issues concerning the judgment granted in favor of Egle and Allstate on their prescription exception.
By supplemental petition, Egle and Allstate were added to the Kendricks’ lawsuit on May 28,1997.[2] In the petition, flooding of the Kendricks’ home was alleged to have occurred on “May %, 1995” and 43 times thereafter, the last of which was April 12, 1997. The flooding was allegedly caused by the Parish’s failure to maintain adequate drainage, their failure to enforce the Parish regulations and Egle’s construction of a patio, in violation of the Parish | ^regulations, within 8 inches of the property line.
Egle argued that the Kendricks’ claims against them had prescribed. The petition, on its face, showed that more than one year had elapsed between the May 1995 flooding and the filing of the petition, May 28, 1997, asserting a claim against Egle. The trial court agreed and granted the exception.
On appeal the Kendricks argue that the trial court erred in holding that their entire claim against Egle was barred by prescription. The Kendricks argue that their claims against Egle should be controlled by La. C.C. art. 664, “Rain drip from roof,” which they argue has a 10 year prescriptive period. The Kendricks also argue that Egle and the parish are solidary obli-gors and thus suit against the Parish interrupted prescription as to Egle. Finally, the Kendricks argue that each flooding incident should stand on its own and any claims asserted within one year prior to the filing of suit should not be barred.
*721 The Kendricks argue that a 10 year prescriptive period should apply to claims under La. C.C. art. 664 having to do with rain drops from the roof. They rely on an 1834 case, Vincent v. Michel, 7 La. 52 (1834) in support of their argument. However, we are not persuaded by this argument. The Vincent ease does not stand for the proposition espoused by the Ken-dricks, that a 10 year prescriptive period applies to a claim for damages caused by rain dripping off of a neighbor’s roof. Rather, Vincent concerned the question of acquiring the servitude of right of drip after a 10 year period.
La. C.C. art. 664, concerning rain dripping from a roof provides:
A landowner is bound to fix his roof so that rainwater does not fall on the ground of his neighbor.
La. C.C. art. 667 concerning the limitations of the use of property provides in pertinent part:
|s Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
La. C.C. art. 3493, concerning the prescriptive period applicable for damage to immovable property provides:
When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage.
La. C.C. arts. 664 & 667 create legal servitudes that place limitations on the ownership of property. In a suit for damages to immovable property caused by a violation of the duty imposed by these articles the applicable prescriptive period, as set out in La. C.C. art. 3493, is one year from knowledge of the damage.[3] Dean v. Hercules, Inc., 328 So.2d 69 (La.1976); Gaharan v. State Through the Dept. of Transp. and Development, 566 So.2d 1007 (La.App. 3rd Cir.1990). The determination of the applicable period of prescription must be made in light of the responsibility that these articles impose. Since the articles impose a legal responsibility, the incidents and effects of which are ordinarily determined by analogous application of the rules governing delictual responsibility, application of the 1 year prescriptive period is amply justified. Yiannopoulos, Louisiana Civil Law Treatise, Vol. 4, § 63. Thus, in accord with article 3493, prescription begins to run from the day the injured party acquired, or should have acquired, knowledge of the injury and other pertinent facts, namely, from the day the damage became apparent.
In this case, the Kendricks stated in their supplemental petition that their |flhome was flooded on May 7th or 8th of 1995, in part due to the construction and location of the Egle patio. However, the supplemental petition naming Egle as a defendant was not filed until May 28, 1997, well over a year after knowledge of the injury, problem and damage. Moreover, in her deposition, Mary Kendrick stated that the patio was constructed in the fall of 1992 and that the first flooding of her home caused by the construction of the patio in close proximity to the property line occurred approximately 6 months later in the spring of 1993. Therefore, under the deposition admissions, the Kendricks were aware of the problems and damages caused by the construction and location of the patio as early as the spring of 1993. The one year prescriptive period set out by La. C.C. art. 3493 expired in the spring of 1994. Thus, even if we were to agree with the Kendricks’ argument that Egle and the Parish are solidary obligors, so that suit against the Parish interrupted prescription as to Egle, it would not save the Kendricks claims against Egle. The suit against the Parish was not filed until *722 February of 1995, over a year after the damage resulting from the construction of the patio became known to. the Kendricks. Once a cause of action against one solidary obligor has been extinguished by prescription, it cannot be revived by the subsequent filing of a timely suit against another. Nordgren v. Trojan Contractors, Inc., 94-417 (La.App. 5th Cir. 12/14/94), 648 So.2d 980. Therefore, any claims by the Kendricks against Egle have prescribed and are not effected by the Kendricks suit against the parish.
Finally, the Kendricks argue that, at the very least, they should be able to recover for any damages they suffered within a year preceding the filing of the suit. While we cannot say that their argument in this regard is totally implausible, it does not line up with our interpretation of La. C.C. art. 3493 l1fland how it was intended to apply.
The circumstances of this case do not present a continuing tort. Egle built the patio in the fall of 1992. It was completed at that time. Any wrong or breach of a duty that was owed, occurred at that time. The Kendricks property first flooded, according to Mary Kendrick’s deposition, some 6 months later in the spring of 1993. It was at that point that the Kendricks acquired knowledge of the damage cause by the wrong committed by Egle. The Kendricks’ home has flooded numerous times since then. However, as provided in La. C.C. art. 3493, prescription commenced to run from the day the Kendricks acquired knowledge of the injury or resulting damages.
Our brothers on of the Third Circuit reached a similar result in the case of Gaharan v. State Through the Dept. of Transp. and Development, 566 So.2d 1007 (La.App. 3rd Cir.1990); affirmed in part, writ dismissed in part, 579 So.2d 420 (La. 1991). In Gaharan, it was alleged that the DOTD had obstructed natural drainage with new construction of a state highway which resulted in flooding damage to plaintiffs’ property on three separate occasions over a 9 year period. Suits were brought by the plaintiffs to enjoin the obstruction to the natural drainage and to secure damages arising from the 3 floods. The DOTD filed an exception of prescription. Ultimately, on appeal, the Third Circuit decided that the claims for injunctive relief had not prescribed, but that the claims for damages had prescribed. In so holding, the court noted that the prescriptive period to enforce a natural servitude through injunction differed from the prescriptive period to obtain damages. As to the damage claim, the court found that “[rjepeated instances of flooding do not serve to interrupt prescription on damage claims. Carbo v. Hart, 459 So.2d 1228 (La.App. 1st Cir.1984), writs In denied, 462 So.2d 654 (La.1985).” Therefore, all the damage claims were held to be prescribed and were dismissed despite the fact that some involved flooding that occurred within the year preceding the filing of suit. The Supreme Court affirmed the appellate decision on the injunction issue and dismissed the writ on the damage claims because it was asserted only in the alternative that the holding on the injunction issue was reversed. While it is true that the Gahar-an case involved La. R.S. 9:5624 and not, as here, La. C.C. art. 3493, the reasoning is equally applicable here. Prescription began to run when the damages were sustained, that is, when the first damages were sustained, not when each separate flooding occurred.
Accordingly, for the reasons set out above, the judgments of the trial court granting the partial exception of prescription filed by the Parish and the exception of prescription filed by Egle and Allstate are affirmed. The case is remanded for further proceedings consistent with the views expressed herein. Costs of appeal are assessed against the Kendricks.
AFFIRMED.

. The statute was amended in 1997, by Act No. 491, § 1 and No. 1146, § 1, but the amendments are not relevant to the issues presented herein.

. A request to file a supplemental petition adding Egle and Allstate was filed by plaintiff on February 18, 1997, but the trial court denied leave to file the supplemental petition.

. Under La. C.C. art. 664 the Kendricks may be able to assert a claim for injunctive relief over a ten year period, but not, as asserted here, a claim for damages.