PONDER, Justice.
 

 In this suit the plaintiff is seeking an injunction to restrain the town of Ruston and its employees from causing or permitting waste water emptied from the town’s swimming pool to flow across and damage his land.
 

 The plaintiff owns a tract of land located in the town of Ruston. The town owns and operates a 'concrete swimming pool which has a capacity of between 450,000 to 500,000 gallons of water. The town owns the property on which the swimming pool is located. Between the town’s property and the plaintiff’s property there is a highway and a tract of land owned bv
 
 *406
 
 Raymond Heard. There is a small branch or natural drain that runs through the town’s property near the swimming pool across the property of Raymond Heard under the Dixie Overland Highway and across the plaintiff’s property. Once a week during the summer the swimming pool is emptied into this ditch or natural drain from the swimming pool through a 14-inch outlet. It requires from an hour to an hour and a half to empty the water from the swimming pool. The point where the water enters the ditch is approximately 450 feet south of the plaintiff’s south boundary line. The plaintiff instituted this suit seeking a judgment to enjoin the town of Ruston from emptying the water into the ditch or natural drain and permitting it to flow across and damage his land. The plaintiff alleged that if the town is permitted to continue discharging the water from the swimming pool it will damage him to extent of total loss and thereby cause him irreparable injury. He alleged that the present value of his land is not less than $10,000 and that it has already been damaged by this water to an amount in excess of $5,000. The town answered the plaintiff’s petition, the case was duly tried and the lower court rendered judgment rejecting the plaintiff’s-demands. The plaintiff has appealed.
 

 The record does not show how many acres are contained in the plaintiff’s land. The land was unimproved at the time the plaintiff bought it and no improvements have been placed on it. The plaintiff testified that when he purchased the property some twenty years ago that he could step across the ditch or drain, but that it is now from six to eight feet wide. He estimated that 75 per cent of the erosion that has taken place in the ditch since the pool was built has been caused by the water emptied from the swimming pool. A witness for the plaintiff testified that it was his opinion that the flow of water from the swimming pool across the plaintiff’s property damages it. The mayor of the town of Ruston testified that the swimming pool was constructed in the year 1931 at a cost of $27,500 and that it is kept open and in operation about three and a half months each year. He testified that the pool is emptied on an average of about fifteen times per year. He further testified that the plaintiff has never made any complaint either to him or the town council of any injury or damage the water from the pool was causing his land until thirty days before this suit was filed and that that complaint was made in a letter from the plaintiff’s attorney. A witness for the town, who is an Assistant Professor of Engineering at Louisiana ’Tech, testified that from scientific tests he had made the amount of water discharged from the swimming pool into the ditch each year is only one-tenth of the amount that flows through it from the natural drainage from rainfall. He testified from actual tests made by him that the water emptied from the swimming pool picked up and carried away only one-half of one cubic foot of soil and that on the basis of this experiment in a year’s time the water from the swimming pool would erode seven and one-half cubic feet of soil which would only carry away
 
 *408
 
 seventy-five cubic feet of soil 'from the plaintiff’s land in ten years.
 

 The plaintiff contends that the natural drainage servitude imposed upon his property in favor of the defendant’s property
 
 by
 
 Article 600, Revised Civil Code, is being made more burdensome by the discharge of the water from the swimming pool and that he is entitled as a matter of right to an injunction to protect his property from such additional injury and damage.
 

 The record shows that when the swimming pool is emptied into the drainage ditch that the drainage ditch does not overflow but the water is confined solely within the ditch. From a preponderance of the testimony the damage caused the plaintiff is negligible which can be adequately compensated in money. While the natural servitude of drainage through plaintiff’s property has been made slightly more burdensome on account of the water from the swimming pool flowing across the property, the damage is of such a negligible character that it would not entitle the plaintiff to an injunction as a matter of-right. Under the doctrine laid down in the case of Young v. International Paper Company, 179 La. 803, 155 So. 231, 233, the question presented is one that addresses itself to the discretion of the court. In the case of Young v. International Paper Company, supra, the Court stated:
 

 “Plaintiff has asked for an injunction to abate the alleged nuisance. The trial court, under all of the facts before it, refused to grant the injunction. The granting of it was discretionary. Plaintiff’s land is hardly susceptible now to any damage that the water may cause it, and, if such should occur, it may be easily compensated in money. To enjoin defendant from using the stream to take off its waste water, and thereby deprive it of its only means of doing so, is virtually to close down mills costing several millions of dollars to prevent some possible damage, of no particular moment, on land, which has but slight value, save possibly for mineral' purposes.
 

 “In City of Harrisonville, Mo., v. W. S. Dickey Clay Mfg. Co. 289 U.S. 334, 53 S.Ct. 602, 603, 77 L.Ed. 1208, it was said in a suit to enjoin the pollution of a creek by sewage from a city that:
 

 “ ‘Thus, the question here is not one of equitable jurisdiction. The question is whether, upon the facts found, an injunction is the appropriate remedy. For an injunction is not a remedy which issues as of course. Where substantial redress can be afforded by the payment of money and issuance of an injunction would subject. the defendant to grossly disproportionate hardship, equitable relief may be denied although the nuisance is indisputable. This is true even if the conflict is between interests which are primarily private.’ ”
 

 The plaintiff can be adequately compensated for his damage and he is not entitled to an injunction herein.
 

 The defendant urges in' his answer that since the plaintiff has stood by for eight years and permitted the water from the swimming pool to be drained across his land that the plaintiff is estopped from claiming an injunction. Since we have arrived at the conclusion that the injury
 
 *410
 
 or damage is so negligible, it is unnecessary for us to consider this contention.
 

 In the case of McFarlain v. Jennings-Heywood Oil Syndicate, 118 La. 537, 538, 43 So. 155, cited by the plaintiff, the demand was for damages and did not involve injunctive relief. Ogden v. Police Jury of East Baton Rouge Parish, 166 La. 869, 870, 118 So. 65, and Chandler v. City of Shreveport, 169 La. 52, 124 So. 143, cited by the plaintiff were cases where water was diverted to such an extent that the injury or damages were of an aggravated nature. In fact, they were of such nature that it practically destroyed the usefulness of the property over which the water flowed. Neither of the cases cited is authority to the effect that where the damage caused to the property is negligible and can be adequately compensated in damages that such causes irreparable injury and warrants the issuance of an injunction.
 

 For the reasons assigned, the judgment is affirmed at appellant’s cost.